Illinois Central Railroad Co. *v.* Copeland.

THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, *v.*
HENRY C. COPELAND, Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

Interested parties suing for the value of lost baggage, may prove the contents and loss of such baggage, but not the value of the articles; and the jurors, when the property is described, may have a proper measure of damages in their own knowledge of values.

The declaration need not aver that the plaintiff was a passenger, this fact can be proved without an averment, by the possession of a baggage check and ticket; and by the check alone, if it appears that such checks are not given until the passenger tickets are shown.

A reasonable amount of bank bills may be carried in a trunk, and their value recovered as lost baggage.

A railroad corporation selling through tickets over its own and other roads, is liable for the safety of passengers and baggage to the point of destination; especially is this the case with the Illinois Central Railroad Company.

It would seem that a like liability for not delivering goods over connecting roads also exists, when they are marked for a particular place.

THIS declaration avers the defendant to be a common carrier of goods and chattels for hire, in and by a certain railroad or railroads from the city of Chicago to the city of St. Louis. That at defendant's request, plaintiff below caused to be delivered to it certain goods and chattels, (enumerated in the declaration, and as they are described in the deposition of the plaintiff and his wife,) the property of the plaintiff, and of the value of $500, to be carried by the said railroad or railroads from Chicago to St. Louis ; that defendant, in consideration of a reward, etc., undertook and promised to carry and deliver as aforesaid, etc.; that although the defendant had and received the goods, for the purpose aforesaid, yet not regarding, etc., it did not deliver, etc., but by mere carelessness, negligence and improper conduct of the defendant, the goods were lost to the plaintiff, etc.

The list of articles, alleged to have been contained in the trunk, is indorsed as the " account sued on."

General issue and affidavit of merits by defendant.

There was a trial by jury, Dec. 5, 1857, before HIGGINS, Judge, and verdict for plaintiff, $410 and costs.

Motion for new trial made, and overruled.

Defendant prayed an appeal, Dec. 22, 1859.

Appeal bond approved and filed, Jan. 14, 1860.

On the trial, plaintiff introduced in evidence a brass " check," admitted by defendant to be a " baggage check," which was marked, " Chicago & St. Louis."

It was further admitted that such checks were never given out except to passengers, who are required to exhibit their

tickets for the place to which the check is given, before they can get a check for their baggage to such place.

· The plaintiff's counsel then offered in evidence the depositions of the plaintiff and his wife. To the admission of which the defendant objected, because,

1st. It is not averred in the declaration that the plaintiff or his wife was a passenger on the defendant's cars.

2nd. There was no sufficient evidence of the delivery of the trunk by the plaintiff to the defendant.

3rd. It is not proved that the plaintiff could not show the value of the contents of the trunk by other evidence.

The objection was overruled.

The deposition was allowed to be read in evidence, and in substance states, that on the 21st day of October, 1857, the plaintiff and his wife paid their fare and took passage on the train of the Illinois Central Railroad for St. Louis. That the plaintiff owned a large leather trunk, containing a large number of valuable articles ; that the trunk was worth ten dollars, and contained the following articles, to wit: (naming them, and affixing a value to each.)

That the trunk and articles were worth in the aggregate the sum of $420, and that they were delivered to said railroad company on the 21st of October, 1857, by the plaintiff, and that he received a brass check, of the description as above.

That said check was in possession of his attorneys, who brought the suit. That said trunk and articles, nor any of them, have ever been delivered to the plaintiff, and that he never received any pay for them.

" And they further say that they know of no witness by whom they could prove said trunk and the contents, and the value thereof, and the facts herein stated."

The plaintiff, by his counsel, then admitted on the trial, that the trunk in question was carried by the defendant on the cars to Mattoon, at the point of intersection of the defendant's road by the Terre Haute and Alton Railroad, and there safely delivered to and placed upon the cars of the said Terre Haute and Alton Railroad Company, which was the proper route, and the one over which it was intended by the plaintiff, when he took passage in the defendant's cars, that the baggage should be conveyed to St. Louis.

The plaintiff then withdrew any claim to recover for the value of the trunk, and insisted only on his right to recover the value of its contents.

The defendant, by its counsel, then offered in evidence passenger tickets, which were admitted by the plaintiff's counsel to be of the same kind or description as were on the 21st of Oct.,

1859, and have been since, sold and furnished to passengers from Chicago to St. Louis, over this route. These are commonly called coupon tickets.

The foregoing was all the evidence.

The defendant, by its counsel, requested the judge to give to the jury the following instructions in writing:

1. The averment in the plaintiff's declaration, that the defendant was a common carrier of goods and chattels, does not import that said defendant was a common carrier of bank bills. The plaintiff cannot, therefore, recover in this action for the loss of any bank bills, even if any such loss were shown.

2. The acceptance of the plaintiff's trunk by the defendant, consigned to a point beyond the terminus of its route, and the giving of a check for the same as so consigned, does not imply a contract on its part to act as common carrier beyond its line, but simply a contract to carry it to its terminus, and then forward, by the usual conveyance, towards its ultimate destination.

3. It being conceded that, in this case, the plaintiff's baggage was safely conveyed to the end of its line, and was there delivered to the proper carriers to be forwarded to St. Louis, the jury are instructed that the defendant performed its full legal duty, and cannot be held liable for a loss that happened on any railroad besides its own.

4. A railroad company is not responsible for the loss of articles in a passenger's trunk, which are not properly included within the designation of baggage, and it is incumbent upon passengers to use ordinary care and diligence in relation to such matters. If, therefore, the jury are satisfied that the plaintiff is chargeable with a want of ordinary care, in depositing money or jewelry in his trunk, to be so transported to St. Louis, or if the plaintiff had an unreasonable [and unusual] amount of property in his trunk, he is not entitled to recover for such money or jewelry, or for such unreasonable [and unusual] amount of property, the rule being that the passenger is entitled to a reasonable amount of baggage, and to include in it such articles as are necessary and convenient for personal use, and as it is usual for persons traveling to take with them.

The first, second and third of the foregoing instructions were refused by the said judge; and the defendant excepted.

The fourth instruction was amended by the judge, by striking out the words " and unusual," where they occur in two places in said instruction, and which are included in brackets, and by adding to said instruction the following, to wit: " A passenger may recover for articles of jewelry carried in his trunk, when traveling with his wife; so a watch carried in one's trunk is proper baggage, and a reasonable amount of money for trav-

eling expenses." And the instruction, as thus amended, was given to the jury.

The defendant excepted to the said amendments, and the refusal of the judge to give the instruction as asked by the defendant.

The judge, with the instruction aforesaid, left the issue and the evidence so given on the trial, to the jury, who returned their verdict for the plaintiff for $410, damages.

The counsel for the defendant moved for a new trial, because,

1. The deposition of the plaintiff and his wife was improperly admitted on the trial.

2. There was no legal or sufficient evidence as to the value of the contents of said trunk.

3. Proper and legal instructions asked for by the counsel for the defendant, were refused by said judge.

4. The verdict was against the law and the evidence.

The motion for a new trial was overruled, and the defendant excepted.

Judgment was rendered on the verdict for $410, and costs of suit.

Stuart & Ayer, for Appellant.

Scates, McAllister & Jewett, for Appellee.

Breese, J. The appellant makes the following points on this record :

" First. The deposition of the plaintiff and his wife was improperly admitted on the trial.

" Second. The testimony of the plaintiff and his wife was improperly admitted as evidence of the delivery of the trunk alleged to have been lost, and of the value of its contents.

" Third. Bank bills carried in a passenger's trunk are not ' baggage,'— and without notice to the carrier, and in the absence of fraud, the carrier will not be liable, in case of loss, for their value.

" Fourth.  The liability of the defendant as a common carrier, did not extend beyond its own route, and the safe delivery of the baggage to the next carrier, unless the plaintiff proves a special contract, extending its general liability.

" Fifth. The defendant, as a common carrier, is restricted to the powers defined in its charter, and is incompetent to contract for the transportation of goods beyond the terminus of its route."

This court has said, in *Parmelee* v. *McNulty*, 19 [Ill. R. 558, and in *Davis* v. *Mich. South. and North. Ind. R. R. Co.*,

22 Ill. R. 278, and in the case of the *Ill. Cent. R. R. Co.* v. *Taylor, ante,* 323, that the owner of the trunk containing baggage can, from the necessity of the case, prove the contents of the trunk, but not their value, and so can the wife, in all cases where her husband can be such witness. This rule is repudiated in some of the States, and it can only be defended on the alleged necessity of the case. We have always endeavored to restrain the rule within the narrowest possible limits, and to caution juries when they receive such testimony.

We have allowed the interested parties to go so far as to prove the contents and loss, but not the value of the articles. As we said in *Davis* v. *Mich. South. and North. Ind. R. R. Co.,* by a description of the articles, any dealer in such articles can establish their value, so that there is no necessity for the evidence of the owner on that point. There is other evidence in every town and city in the State quite accessible to the party; and the jurors themselves, when the property is described, may have a proper measure of damages in their own knowledge of values. Such portion of the deposition, as went to prove the value of the articles should have been rejected by the court. But it is contended the whole deposition should have been rejected, because the rule is confined to the baggage of a passenger traveling on the road, and there is no averment in the declaration that the plaintiff was such passenger. We do not consider this a valid objection. That these parties were passengers on the road, can be proved if there be no averment of that fact, and is proved by the check and ticket.

In declaring for lost baggage, it is not indispensable, that it should be alleged the owner was a passenger on the road with the baggage. A check is not only *prima facie* evidence that the baggage was delivered to the company, and so intended, but it is also evidence that the party holding it has purchased the rights of a passenger. This fact, though not alleged in the declaration, could be proved by the check and tickets. The fact that it is the usage of the company to give out no check for a passenger's baggage, until a regular ticket for the trip is exhibited by the owners or custodian of the baggage, makes the check evidence of his being a passenger. The check itself proves that the baggage was to go from Chicago to St. Louis *via* the Terra Haute, Alton and St. Louis Railroad, running in connection with the Illinois Central Railroad, and this would be implied from the check and ticket; and it will be presumed as the plaintiff held them, that he owned them.

This disposes of the first two points. In *Davis* v. *Michigan Southern and Northern Indiana R. R. Co., supra,* this court said that a trunk was no place to carry so large an amount of

money in it, as was claimed by the plaintiff, unless it was in gold or silver, and that the sum was unreasonable ($439) for traveling purposes.   It has been held by some courts, that a sum necessary for traveling purposes may be properly carried in a baggage trunk, and the company need not be *informed* of it.   The court properly instructed the jury in this case that the bank bills might be considered baggage.

Upon the remaining points, we are satisfied, under the tickets issued by this company, their liability as common carriers extended from Chicago to St. Louis, no matter how many intervening routes there may have been.   The presumption, from the check and ticket, is, they were running in connection with such routes.

Redfield, in his treatise on the law of railways, says, where different railways, forming a continuous line, run their cars over the whole line, and sell tickets for the whole route, and check baggage through, an action lies against either company for the loss of baggage.   Page 242.

The English rule on this subject is well settled.   The courts of that country regard parties who receive goods, and book them for a certain destination, as carriers throughout the entire route.   The first case in which this position was assumed, was the case of *Muschamp* v. *The Lancaster and Preston Junction Railway Co.*, decided in the Court of Exchequer, in 1841, and reported in 8 Meeson and Welsby, 421.   The rule established in that case, as we have stated it, has never been departed from, but reinforced whenever a fit occasion presented, and has, in fact, been extended to goods received, and booked for points beyond the limits of England ; *Crouch* v. *The London and North-Western Railway Co.*, 25 Eng. L. & E. 287 ; and has been recognized by every court in Westminster Hall.   *Watson* v. *The Ambergate, Nottingham and Boston Railway Co.*, 3 Eng. L. & E. 497.

The courts of this country have, some of them, doubted this rule, preferring to hold, when goods are delivered to a carrier, marked for a particular place, but unaccompanied by any other directions for their transportation and delivery, except such as might be inferred from the marks themselves, the carrier is only bound to transport and deliver them according to the established usage of the business in which he is engaged, whether that usage was known to the party from whom they were received, or not, and that no implication arises of any further liability. To this effect are *Van Santvoord* v. *St. John*, 6 Hill N. Y. R. 157 ; *Farmers' and Mechanics' Bank* v. *Champlain Transportation Co.*, 18 Vermont, 140 ; and same case, 23 ib. 186 ; *Hood*

22

v. *New York and New Haven Railway Co.*, 22 Conn. 1, 502; *Nutting* v. *Connecticut River Railway*, 1 Gray, (Mass.) 502.

It is not necessary, perhaps, for this court to express any opinion on this point, as it does not arise in this case, but we may say, we are inclined to yield to the force of the reasoning of the English courts, on principles of public convenience, if no other, and to hold, when a carrier receives goods to carry, marked for a particular place, he is bound to carry to, and deliver at that place. By accepting the goods, so marked, he impliedly agrees so to do, and he ought to be answerable for the loss.

In this case, we hold, the ticket and the check given by this company and produced in evidence, imply a special undertaking to carry the passenger by Mattoon to St. Louis, *via* the Terre Haute and Alton Railroad, and his baggage also. The ticket is what is known as a through ticket, and the check denotes that the baggage is checked through from Chicago to St. Louis, and both inform the passenger that the Illinois Central Railroad Company has running connections with the Terre Haute and Alton Road, and that they can and will deliver the passenger and baggage, by means of this connection, at St. Louis. The ticket and check are both issued by the Illinois Central, they are the evidences of the contract made with them, and in effect speak this language : if you will buy this ticket we will carry you safely to St. Louis, and your baggage also—the terminus of our road, by means of our connections with the Terre Haute and Alton Road, is at St. Louis, and we guarantee to you, your safe arrival there with your baggage, you having no further care or concern about it, whether we run our own cars through, or take those of the other road at the point of intersection—you pay through, and you and your baggage shall be carried through. This is the contract, evidenced, as we think, by the ticket and check. There are three tickets on a small sheet of paper, all connected together, and all headed " Illinois Central Railroad," thereby implying that they are issued by that Company.

The first informs the purchaser that this company carries passengers through to St. Louis, by the words, " From Chicago to St. Louis." The second ticket informs him that he has paid his passage to the Illinois Central Company, to Mattoon ; and the third, that he has paid to the same company his passage from Mattoon to St. Louis, *via* the Terre Haute and Alton Railroad. The last ticket is preserved by the Terre Haute and Alton Railroad Company, as evidence, in their settlement with the Illinois Central, that the former company has carried a passenger for the latter company on their road, from Mattoon to St. Louis. So it is with the baggage check. It is a through

check, and the Illinois Central, by issuing it, make themselves responsible for the loss of the baggage indicated by the check.

It can make no difference, we apprehend, whether the passengers and baggage changed cars at Mattoon, or not. The passengers can rely on their tickets and checks, and hold the Illinois Central accountable for loss or damage. We think the evidence is strong enough to imply a special undertaking by the defendant, to carry this passenger and his baggage through from Chicago to St. Louis, and, *pro hac vice* the Terre Haute and Alton Road was the defendant's road.

But the appellants insist that the company has no chartered power to enter into such arrangements, and make such contracts, and the case of *Hood* v. *The New York and New Haven Railroad*, 22 Conn. 510, S. C. 24, ib. 482, is cited.

We have not examined to see if that case has not been overruled by the court deciding it, in some subsequent case, but be that as it may, the court seemed to have overlooked the consideration, that in all legislative grants many things must of necessity be taken by implication, as necessary to the enjoyment of the grant itself. The grant to the Illinois Central was to construct and operate a railroad from Chicago to Cairo, and to cross and intersect other roads, not for the benefit of the company alone, or its stockholders, but for the benefit of the public, and for the accommodation of the immense traffic and commerce, of which this State might reasonably be expected to become a most important theatre. Hence, by confining the road to a simple traffic betwen the *termini* and points directly on its route, the country remote from its direct line would be benefited in a very trifling degree, or not at all, if these *quasi* partnerships with other roads were not allowed. The great object of their charters could not be accomplished if they were so restricted, and it may well be deemed an indispensable incident to the powers expressly granted. The object to be attained is within the general objects of their incorporation. They are instrumentalities of commerce, and of trade, in which the entire public are interested, and which are essential to their prosperity. But be this as it may, the legislature of this State passed an act entitled, " An act to enable railroad companies to enter into operative contracts, and to borrow money," (Private Laws, 1855, p. 304,) by the provisions of which, such running connections are expressly authorized. Even without this act, we should feel no disposition to deny the power.

For the reasons, however, which we have given, the judgment is reversed, and the cause remanded.

*Judgment reversed.*