The Wabash, St. Louis and Pacific Railway Company

*v.*

Edward Jaggerman *et al.*

*Filed at Mt. Vernon January 25, 1886.*

1.  Carriers—*of the duty to deliver goods beyond their own lines, according to marks and destination.* It is well settled in this State that when a common carrier receives goods to carry, marked to a particular place beyond his line, he is bound, under an implied agreement from the marks and directions, to carry to and deliver at that place, although it be a place beyond his own line of carriage.

2.  Same—*words in bill of lading as overcoming implied agreement from marks of destination.* Apples were shipped by rail at Staunton, under a bill of lading, by which the railway company acknowledged their receipt, "to be forwarded to East St. Louis station, on its line," and under the heading "Marks and Destination," in the bill of lading, was written, "G. A. Burton, St. Louis, Mo.:" *Held,* that the words in the bill of lading, "to be forwarded to East St. Louis station, on its line," were not sufficient to overcome the implied undertaking, arising from the "marks and destination," to carry to St. Louis, Mo.

3.  Same—*right of consignee to change destination.* Where the owner of goods ships them by rail under a contract to transport them to the consignee in St. Louis, Mo., and they are so carried, it is error, in an action by the shipper against the carrier for damages, arising from delay in the delivery of the goods, to permit the consignee to testify that he had notified the general freight agent of the defendant that he wanted the goods sent to him at East St. Louis, and to hold car lots there, and notify him, when there is no proof showing authority in the consignee to interfere and change the shipper's contract.

4.  Same—*limiting liability by contract.* A carrier may, by special contract with the shipper, limit his liability to such damage or loss as may arise on his own line of carriage.

5.  Notwithstanding a provision in a bill of lading that the carrier should not be responsible for "damage to perishable property of any kind occasioned by delays, from any cause," he may and will become liable for delay as the result of actual negligence. But proof of delay, merely, is not sufficient to show negligence in transporting the goods.

6.  Same—*evidence as showing shipper's assent to a limitation of liability.* In an action by the shipper of apples under a bill of lading exempting the carrier from liability for damage to perishable property from delay, it is competent for the defendant to prove that prior to such shipment the

plaintiff had filled up similar blank bills of lading for shipments which contained the same stipulation in regard to perishable property, as going to show plaintiff's knowledge of and assent to such provision.

7. INSTRUCTION—*leaving construction of contract to jury.* Where goods are received by a carrier for transportion, and a bill of lading given the shipper showing the contract, it is error for the court, by an instruction, to leave it to the jury to say what the contract was. The court should tell the jury what, by the bill of lading, the contract was.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. GEORGE B. BURNETT, for the plaintiff in error:

Under the bill of lading, the undertaking of plaintiff in error was to transport the apples to East St. Louis, and there deliver them to a connecting carrier, to be transported to St. Louis, Mo. *Railroad Co.* v. *Copeland,* 24 Ill. 332; *Railroad Co.* v. *Johnson,* 34 id. 339; *Railroad Co.* v. *Frankenberg,* 54 id. 88; *Railway Co.* v. *Montfort,* 60 id. 165; *Field* v. *Railway Co.* 71 id. 458; *Railway Co.* v. *Smith,* 74 id. 197; *Railroad Co.* v. *Wilcox,* 84 id. 239.

The court erred in refusing to permit plaintiff in error to prove facts tending to show plaintiffs' knowledge of the conditions printed in the bill of lading. *Field* v. *Railroad Co.* 71 Ill. 458; *Transportation Co.* v. *Moore,* 88 id. 136.

Where the defendant could have shown, if it had been permitted to do so, facts from which plaintiffs' knowledge of the conditions of the bill of lading would have been presumed, then such conditions would have been binding upon plaintiffs. *Railroad Co.* v. *Morrison,* 19 Ill. 136; *Transportation Co.* v. *Newhall,* 24 id. 466; *Baker* v. *Railroad Co.* 42 id. 73; *Anchor Line Co.* v. *Dater,* 68 id. 369; *Field* v. *Railroad Co.* 71 id. 458; *Transportation Co.* v. *Theilbar,* 86 id. 71.

Messrs. METCALF & BRADSHAW, for the defendants in error.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action originally commenced before a justice of the peace, to recover the sum of $140.25, damages, alleged to have been caused by the wrong delivery and unnecessary delay in the shipment of one hundred and sixty-five barrels of apples. There was a judgment before the justice for $133.25, from which the defendant appealed to the circuit court. The trial in the circuit court resulted in a verdict and judgment for plaintiffs for $140.25, which judgment, on appeal to the Appellate Court for the Fourth District, was affirmed, and the defendant brings this writ of error.

The apples were shipped from Staunton, in Macoupin county, Illinois, on the evening of September 28, 1882, under a bill of lading, by which the railway company acknowledged their receipt, "to be forwarded to East St. Louis station, on its line," and under the heading "Marks and Destination," in the bill of lading, is written, "G. A. Benton, St. Louis, Mo." The evidence shows that the apples arrived at East St. Louis at the usual time, September 29; that in the afternoon of the 29th they were transferred, at East St. Louis, to the Bridge and Tunnel Company, the connecting carrier between East St. Louis and St. Louis, to be sent to St. Louis; that the consignee was not notified of their arrival at St. Louis, and did not get them until the 3d or 4th of October, when they were received in a bad condition; and that the consignee had before given notice at the general freight office in East St. Louis, that he wanted goods sent to him at East St. Louis, and had given notice to hold car-load lots there, and notify him.

The circuit court, at the instance of the plaintiffs, instructed the jury, that if they believed, from the evidence, that the plaintiffs shipped on the railroad of defendant one car-load of apples, in good condition, at Staunton, to Benton & Co., at East St. Louis, and that the apples were not deliv-

ered according to the contract, but were carried beyond the place of delivery, to St. Louis, and that in consequence of the failure of the defendant to deliver said apples, said apples were injured and suffered damage, and that the consignees, Benton & Co., were compelled to sell said apples for less than what they were worth in market if delivered, as stipulated, at East St. Louis, then plaintiffs are entitled to recover the difference between the value of said apples when they were received and when they ought to have been received by Benton & Co.

The defendant asked the court to instruct the jury, that "under the bill of lading read in evidence in this case, it was the duty of the defendant, upon the arrival of the apples at East St. Louis, to deliver them to a connecting carrier, to be transported to their destination; and if the jury believe, from the evidence, that the defendant transported said apples to East St. Louis without unreasonable delay, and there delivered to the St. Louis Bridge and Tunnel Company, a connecting carrier, for transportation to St. Louis, then the jury will find. for the defendant,"—which instruction the court refused to give. This action of the court is assigned for error.

It is the well settled doctrine in this State that where a common carrier receives goods to carry, marked to a particular place beyond his line, he is bound, under an implied agreement, from the marks and directions, to carry to and deliver at that place, although it be a place beyond his own line of carriage. *Illinois Central Railroad Co.* v. *Copeland,* 24 Ill. 332; *Illinois Central Railroad Co.* v. *Johnson,* 34 id. 389; *Illinois Central Railroad Co.* v. *Frankenberg,* 54 id. 88; *Chicago and Northwestern Ry. Co.* v. *Montfort,* 60 id. 175; *Erie Ry. Co.* v. *Wilcox,* 84 id. 239.

It was said in the Frankenberg and other cases, that the carrier might, by special contract with the shipper, limit his liability to such damage or loss as might arise on his own line of carriage, and it is contended that by force of the expres-

sion in the bill of lading, "to be forwarded to East St. Louis station, on its line," there was an express contract to forward to East St. Louis, which overcame the implied agreement, from the "marks and destination," to carry to St. Louis, amounting to a special contract to forward to East St. Louis, and no further. We can not give such force to this language of the bill of lading. East St. Louis being the end of defendant's line, the agreement to forward to that place had that extent, and nothing further. It was consistent with the implied agreement, from the mark of the place of destination, to carry and deliver at that place, which was St. Louis, and should not, in our opinion, be allowed to prevail over or in any way control such implied agreement.

It follows that there was error in giving the instruction for plaintiffs, and refusing the one asked by defendant. The instruction given refers it to the jury to say what the contract was, whereas the court should have told the jury what, by the bill of lading, the contract was; and in its latter part the instruction intimates the contract was to carry to East St. Louis. The refused instruction, abstractly considered, may not have been strictly accurate in excluding any liability after delivery to the connecting carrier; but as applied to the evidence, we think the instruction should have been given.

This action originating before a justice of the peace, where there are no written pleadings, the verdict, it is said, may have been founded on the delay in the hands of the connecting carrier, the bridge and tunnel company, and therefore the judgment should be allowed to stand, notwithstanding such error as to instructions. It is a provision of the bill of lading, that the railroad company should not be held responsible "for damage to perishable property of any kind, occasioned by delays from any cause." Nevertheless, there might have been liability in respect of delay coming from actual negligence. But there was here only the mere proof of delay, and no proof of negligence beyond the fact of delay.

However, the jury should have been correctly instructed as to the contract. Their finding may have been for breach of contract, and delay.caused. by delivering at St. Louis, instead of at East St.. Louis.

We think the court erred in the exclusion of proof that prior to the shipment in question plaintiffs had filled up similar blank bills of lading for shipments, which contained the same stipulation in relation to perishable property as the one in question, as that would have been evidence going to show knowledge of the provision in question, and plaintiffs' assent thereto. And that there was also error in permitting the witness Benton to testify that he had notified the general freight office of defendant that he wanted goods sent to him at East St. Louis, and to hold car lots there, and notify him. He had no authority, from anything that appears in this case, to interfere, and change the contract which had been made between the shipper and the defendant, as to the place of delivery of the apples..

The judgments of the Appellate Court and of the circuit court will be reversed, and the cause remanded to the circuit court.

*Judgment reversed.*