## GEORGE G. FORTIER ET AL.

### v.

## THE PENNSYLVANIA COMPANY.

1. COMMON CARRIER—RECEIPT OF GOODS MARKED BEYOND LINE.—The receipt for transportation by a railroad company, of goods marked for a particular place, is to be construed *prima facie* as a contract to carry and deliver the same at the place for which they are marked, though beyond the terminus of its line.

2. LIMITATION.—The company may, by express contract, limit its obligation to carry the goods to its own line or to points reached by its own carriage, and for safe storage and delivery to the next carrier in the route to the place of destination, and a clause in the receipt given to the owner for the goods, restricting the company's obligations in this respect, if understandingly assented to by the shipper, will as effectually bind him as though he had signed it.

3. SAME.—The limitation must be an affirmative one and the burden is on the company to show it. *Held*, that the alleged limitation as to distance, in the receipt in this case, is void for uncertainty.

Fortier v. Pennsylvania Company.

APPEAL from the Superior Court of Cook county. Hon. SIDNEY SMITH, Judge, presiding. Opinion filed January 27, 1886.

This was an action of assumpsit, brought by George G. Fortier and Eustace F. Bucke, co-partners under the name of Fortier & Bucke, against the Pennsylvania Company, as a common carrier, for the breach of two contracts, one for the transportation of fifty-two barrels and the other of sixty-four barrels of carbon oil, from Cleveland, Ohio, to Brandon, Manitoba. The first consignment was shipped May 5, and the other July 31, 1882. In case of each shipment a receipt or bill of lading was executed by the defendant's agent at Cleveland, and delivered to the plaintiffs, on the first of which the oil was marked and consigned as follows: "G. G. Fortier, Brandon, Manitoba, care Canada Pacific R. R.;" and on the second it was consigned as follows: "Fortier & Bucke, Brandon, Manitoba, care P. R. R." In other respects the two papers were identical, and were as follows:

"Received of Forest City Oil Co. by the Penn'a Co. Railroad, the following property in apparent good order (except as noted), marked and consigned as in the margin, which they agree to deliver with as reasonable dispatch as their general business will permit, subject to the conditions mentioned below, in like good order, the dangers incident to railroad transportation, loss or damage by fire, while at depots or stations, loss or damage of combustible articles by fire, while in transit, and unavoidable accident excepted, at ————— station, upon the payment of charges. The company further agree to forward the property to the place of destination as per margin, but are not to be held liable on account thereof, after the same shall be delivered as above. The company, however, guarantee the through rate of freight as designated below.

CONDITIONS.

"The company do not agree to carry the property by any particular train nor in time for any particular market. * * * It is a part of this agreement that all other carriers transporting the property herein receipted for, as a part of the

through line, shall be entitled to the benefit of all the exceptions and conditions above mentioned, and if a carrier by water, he is to be entitled to the further benefit of exception from loss or damage arising from collisions and all other dangers incident to lake and river navigation."

The defendant transported said oil to Chicago, the terminus of its line, and there delivered it to the Chicago, Milwaukee & St. Paul Railway Company, to be carried to Brandon, Manitoba. The oil having never reached its destination and never having been delivered to the plaintiffs, this suit was brought against the defendant for non-performance of its contract as a common carrier. On the trial before the court without a jury, it was held that the defendant was not liable, and judgment was accordingly entered in its favor for costs. From that judgment the plaintiffs have appealed to this court.

Messrs. PECKHAM & BROWN, for appellants.

Messrs. WILLARD & DRIGGS, for appellee.

BAILEY, P. J. By the rules of the common law, as expounded by the highest judicial tribunal of this State, the receipt for transportation by a railroad company of goods marked for a particular place, is to be construed *prima facie* as a contract to carry and deliver the same at the place for which they are marked, though beyond the terminus of its own line. But the company may by express contract limit its obligation to carry the goods to its own line or to points reached by its own carriages, and for safe storage and delivery to the next carrier in the route to the place of destination; and a clause in the receipt given to the owner for the goods, restricting the company's obligations in this respect, if understandingly assented to by the shipper, will as effectually bind him as though he had signed it. Ill. Cent. R. R. Co. v. Copeland, 24 Ill. 332; Ill. Cent. R. R. Co. v. Johnson, 34 Id. 389; Ill. Cent. R. R. Co. v. Frankenberg, 54 Id. 88; C. & N. W. Ry. Co. v. Montfort, 60 Id. 176; U. S. Express Co. v. Haines, 67 Id. 137; C. & N. W. Ry. Co. v. N. L. Packet Co.,

Fortier v. Pennsylvania Company.

70 Id. 217; Field v. C. & R. I. R. R. Co., 71 Id. 458; Adams Express Co. v. Wilson, 81 Id. 339; Erie Railway Co. v. Wilcox, 84 Id. 239; Merchants' Despatch Tr. Co. v. Kahn, 76 Id. 520; St. L. & I. M. R. R. Co. v. Larned, 103 Id. 293.

The contract in this case was made in the State of Ohio and it is therefore, upon well recognized principles, to be interpreted and enforced in conformity with the laws of that State. But in the absence of proof to the contrary, it will be presumed that the common law prevails in Ohio, and unless it is shown that the courts of that State differ from those of Illinois in their interpretation and exposition of the rules of the common law, it will be presumed that the decisions of our own courts embody a correct exposition of the common law as it prevails in Ohio.

The defendant, to prove the law of Ohio, read in evidence the published reports of two decisions of the Supreme Court of that State, viz., Cincinnati, Hamilton & Dayton R. R. Co., etc. v. Pontius et al., 19 Ohio St. 221, and Little Miami R. R. Co. v. Washburn, 22 Id. 324. We have examined these cases with care and are unable to perceive that they are at all in conflict with the above mentioned rules of the common law as declared by our own Supreme Court.

In the first of said cases the plaintiff delivered to the defendant, a corporation owning and operating a line of railroad running from Cincinnati to Dayton, Ohio, and forming with the roads of other companies a continuous line to New York, certain goods to be transported from Cincinnati to New York. By the bill of lading the defendant expressly agreed to transport said goods to the terminus of its line, and there deliver them to the agents of connecting companies or forwarding lines; and it was further stipulated that in case of loss, detriment or damage to the property, whereby any legal liability should be incurred, that company alone should be answerable therefor, in whose actual custody it should be at the time the same should happen. The goods were promptly transported by the defendant to the terminus of its line and there delivered to the agents of the connecting company, but owing to the negligence of one or all the other companies forming the

through line, the goods were not received at New York in time for the market, and so could not be sold at any price. The decision turned solely upon the construction to be given to the written agreement, and it was held that by its plain terms it was only a contract to carry the goods to Dayton, and that the defendant assumed the liability of a common carrier only to that extent. The rule above cited, that the receipt of the goods marked to a point beyond the defendant's line was *prima facie* evidence of a contract to carry the goods to their ultimate destination, and the authorities, English and American, by which it is supported, were pressed upon the court by counsel, but the court expressly declined to decide that proposition, saying that, "if it be admitted that the consignment marks upon the goods are, in the absence of a contrary agreement, *prima facie* evidence of the distance they were to be carried, the answer in the present case is that there was such contrary agreement."

In Little Miami R. R. Co. v. Washburn, the principle decided was, that a common carrier who undertakes to transport goods over the whole or any part of its own route, and then forward them to a designated destination beyond, is bound to transmit, with the delivery to the carrier next *en route*, all special instructions received by him from the consignor ; and in default thereof, in any material particular, to stand responsible for and make good, the loss to which such negligence shall have contributed. In that case, as in the other, there was an express agreement, limiting the undertaking of the carrier to the transportation of the goods to the terminus of its own line, and to forwarding them from that point to their place of destination by another carrier. The question of the nature and extent of his obligation, in the absence of an express agreement, did not arise and was not decided.

It thus appears that the evidence offered, entirely fails to show that the rules of the common law as held in Ohio, differ in the least from those laid down by our own Supreme Court. We must presume, then, that the law applicable to the questions under consideration prevailing in the two States are identical.

Fortier v. Pennsylvania Company.

Applying the law to the facts in this case, what was the nature and extent of the defendant's undertaking? By receiving for transportation the oil in question marked and consigned to Brandon, Manitoba, it, *prima facie*, undertook to transport it to that place. Was its undertaking in this respect limited by an express agreement? By the bill of lading the defendant acknowledged the receipt of the oil marked and consigned as above stated, and agreed to deliver it with as reasonable dispatch as its business would permit, at —————— station. The blank was not filled in either bill of lading. If this was a limitation upon the distance the defendant undertook by its *prima facie* agreement to carry the oil, what was the limitation? At what point did the defendant stipulate that its liability as a common carrier should cease? On this question the instrument is blank and therefore silent. The limitation must be an affirmative one, and the burden is on the defendant to show it. The one proved applies as well to any other station on the through line, or even to the terminal station to which the goods were consigned, as to Chicago, the terminus of the defendant's road. In this respect the agreement is void for uncertainty, and furnishes conclusive evidence of an intention on the part of the defendant, in filling out the printed blank form of its bills of lading, to abandon that part of it which contained the form for a limitation, upon the terms of its presumptive or *prima facie* agreement.

We are of the opinion then, that, under the evidence, the defendant undertook to carry and deliver the oil at Brandon, Manitoba. This it failed to do, and as the loss of the oil is not shown to have resulted from any of the causes excepted in the bill of lading, the defendant is liable to the plaintiffs for the loss. The finding of the court below was contrary to the evidence, and the judgment will therefore be reversed and the cause remanded for a new trial.

Judgment reversed.