SOUTHERN PACIFIC COMPANY v. J. T. ANDERSON ET AL.

Decided June 12, 1901.

1.—Carriers—Live Stock Shipment—Verbal and Written Contract.

Where a shipper made a verbal contract with a railway company to transport certain live stock, and after the stock had been loaded on the cars the company's agent presented several contracts for signature, stating they were vouchers to be shown the conductors, and the shipper signed them without examination, having no opportunity to do so, the written contracts were void and the verbal contract would control.

2.—Same—Limiting Liability.

In the absence of a statute permitting such a limitation of liability, a stipulation in a contract of shipment restricting the carrier's liability to a value fixed in the contract is void where the property is injured by the carrier's negligence.

3.—Same—Foreign Law—Presumption.

In the absence of proof to the contrary, it is presumed that the law of another State prohibits common carriers from limiting their common law liability as does the law of Texas.

4.—Same—Interest.

Where a shipper recovers for injuries to cattle during transit, he is entitled to interest on the amount of the damages at 6 per cent from the date of their delivery at destination.

Appeal from El Paso. Tried below before Hon. J. M. Goggin.

*Beall & Kemp*, for appellant.

*Turney & Burgess*, for appellees.

FLY, ASSOCIATE JUSTICE.—J. T. Anderson, Henry Sales, E. S. Hughes and J. H. Charliss sued the Southern Pacific Company to recover damages alleged to have been sustained by reason of the breach of a contract of shipment of cattle from Santa Barbara, Cal., to Big Springs, Texas. A trial by jury resulted in a verdict and judgment in favor of appellees for $13,500, with interest thereon from June 3, 1898, at the rate of 6 per cent per annum.

The evidence established that in the latter part of May, 1898, appellees delivered to appellant at Santa Barbara, Cal., 1078 head of cattle to be transported to Big Springs, Texas. Through the negligence of appellant, over 200 of the cattle died, and the remainder were damaged. There is evidence upon which the jury could find for the amount of their verdict.

Prior to the time the cattle were shipped, a verbal contract was entered into between the agent of the appellant and appellees by which it was agreed that in consideration of $100 a car appellant would furnish thirty "palace cars," thirty feet in length, to convey the cattle of appellees from Santa Barbara to El Paso, Texas, and furnish transportation for appellees and employes sufficient to care for the cattle on the journey; that the cattle should be run from Santa Barbara to Yuma in one train, after that to be divided into two trains; that the run to Yuma should be made in twenty to twenty-two hours, and that the other runs between watering and feeding places should be from twenty to twenty-two hours. When the cattle were brought from Santa Rosa Island to Santa Barbara for shipment, appellees, over their protest, were compelled to accept combination cars, only twenty-seven feet long, and which were not so well adapted for cattle-shipping purposes as the cars for which appellees had contracted. After the cattle had been loaded and the train pulled on the main line, preparatory to starting, the agent presented several contracts and requested appellee Anderson to sign the same, stating that they were vouchers for the men on the roads to show the conductors. Anderson did not read the contracts, not having an opportunity to do so, and did not become acquainted with the terms of the contracts until after the train had proceeded on its journey. The terms of the verbal contract as to the times between feeding and watering were totally disregarded by appellant, and the cattle were roughly and carelessly handled. The damages were inflicted on appellant's road between Santa Barbara and El Paso. In the written contracts it was stated that the declared value of the cattle was $10 per head and that they were in a starving condition, and that the amount to be claimed for each animal lost or damaged should be adjusted on the basis of the value at time and place of shipment, not to exceed the sum of $10 a head. The evidence of appellees was to the effect that the cattle were in good shipping condition and of the market value at point of destination of from $35 to $40 per head.

There are a number of assignments of error presented, but there is in reality but one question presented in different forms, and that is as to whether, under the facts and circumstances, a verbal contract had been made between appellant and appellees, and whether it or the written contract should control in considering the case. The first, second, third, and fourth assignments of error seek a review of that portion of the charge of the court which instructs the jury that if certain named facts were proved, then the written contract would be null and void, and the verbal contract would prevail.

In the case of Railway v. McCarty, 82 Texas, 608, there was a verbal contract for shipment of cattle, and the shipper was afterwards required to sign a written contract, and it was held that it was void, and the terms of the verbal contract should prevail. In the case of Railway v. Stanley, 89 Texas, 42, the Supreme Court said: "If, after the cattle were placed upon the train, the plaintiff and his agent had signed them

(contracts of shipment) without knowing their contents and without any new consideration, it may be that they should have been held void." In Railway v. Grant, 6 Texas Civil Appeals, 674, it was said: "Neither is there any merit in the fourth assignment, which attacks that portion of the charge which instructs the jury that if they believe that appellant and appellee made a verbal contract, and that the hogs were received, and the journey was begun, and a written contract was presented to appellee, and he signed it with a knowledge of the contents, or that he had sufficient time to have read its contents, and was not induced to sign it by any false representations of appellant's agent, or that he signed the same under circumstances that he should have read the same, then the jury should find for the appellant. There was nothing objectionable in the charge. The verbal contract would not be merged into a written contract obtained by fraud or misrepresentation." See also Railway v. Carter, 9 Texas Civ. App., 677; Railway v. Avery, 19 Texas Civ. App., 235; Railway v. Wright, 20 Texas Civ. App., 130; Railway v. Wright, 24 Texas Civ. App., 291, 58 S. W. Rep., 846. The case of Railway v. True, 23 Texas Civil Appeals, 523, decided by this court, was quite similar to this, and the railroad company was held bound by the verbal contract and a writ of error was refused by the Supreme Court.

The jury was instructed that if they found that the written contracts were binding upon appellees, but found that they were entitled to damages, the maximum sum of $10 must be used as a basis for estimating the damages. This was more favorable to appellant than the law permits, as it has been held that in the absence of a law permitting such contracts, full compensation must be made for property destroyed or damaged through the negligence of a carrier, regardless of the value fixed in written contracts.

In the case of Railway v. Maddox, 75 Texas, 300, Chief Justice Stayton, speaking for the Supreme Court, said: "The common law and all other laws require the carrier to pay the full value of property lost or destroyed while in its possession, if lost or destroyed under circumstances which impose obligation, and a contract which provides that the carrier shall be freed from obligation or payment of a sum less than the value of the thing lost or destroyed is as much a limitation on the carrier's liability as is a contract that the carrier shall not be responsible for a loss resulting from a cause not sufficient under the law to relieve it from obligation." Again, in the same case it was said: "The contracts provided that the carriers should not be liable for a greater sum per head than therein stated, though the real value might, as was shown to be the case, be more than the highest sum named. In the absence of some law which authorizes a common carrier to relieve itself by contract from liability resulting from the negligence of itself or employes, it is well settled that this can not be done." There are cases where the circumstances are such that the price named in the contract might fix the measure of damages, but the facts of this case do not place it in that list, even though the contract had in other re-

spects been valid.   See also Express Co. v. Hertzberg, 17 Texas Civ.
App., 100.

In the absence of proof as to the laws of California on the subject,
it will be presumed that the laws in that State prohibit common car-
riers from limiting their common law liability, as the laws do in Texas.
Railway v. Baker, 57 Texas, 419; Abercrombie v. Stillman, 77 Texas,
589; James v. James, 81 Texas, 373; Tempel v. Dodge, 89 Texas, 68.

The court did not err in instructing the jury that, in addition to the
damages found, they should also find for interest at the rate of 6 per
cent per annum from the date of the delivery of the cattle at Big
Springs, the point of destination.   Railway v. Jackson, 62 Texas, 209;
Railway v. Greathouse, 82 Texas, 104; Railway v. Holliday, 65 Texas,
521; Railway v. McCarty, 82 Texas, 608.

From a careful examination of all the assignments of error we con-
clude that there is no error shown by the record necessitating a reversal,
and the judgment of the District Court is accordingly affirmed.

                                                              *Affirmed.*

Writ of error refused.