## Baltimore & Ohio S. W. Railroad Co. v. William Ross.

1. COMMON CARRIERS—*Have a Right to Restrict Liability.*—Railroad companies have a right to restrict their liability as a common carrier, by such contracts as may be agreed upon specially, they still remaining liable for gross negligence or willful misfeasance against which morals and public policy forbid that they be permitted to stipulate.

2. SAME—*Have a Right to Limit Time for Presenting Claims.*—A stipulation limiting the time in which claims for damages may be presented is binding upon the shipper when voluntarily and understandingly entered into by him, as the manifest object of such a provision is to force those claiming to be damaged by the carrier's negligence to promptly present their claims for adjustment while the facts and circumstances upon which they are based are fresh in the memories of the parties and witnesses, and to prevent the company from being harassed or imposed upon by dishonest claimants.

3. PRACTICE—*Contract Limiting Liability of Common Carrier Need Not be Specially Pleaded as a Defense in an Action for Damages.*—In an action for damages caused by injury to stock by delay of a common carrier, a contract limiting the carrier's liability may be introduced in defense under the general issue and need not be specially pleaded.

Trespass on the Case, for damages to stock. Appeal from the Circuit Court of Cass County; the Hon. THOMAS N. MEHAN, Judge presiding. Heard in this court at the May term, 1902. Reversed and remanded. Opinion filed November 1, 1902.

HENRY PHILLIPS and KRAMER, CREIGHTON & SHAEFFER, attorneys for appellant; EDWARD BARTON, of counsel.

MILLS & CLIFFORD, attorneys for appellee.

Mr. Justice Burroughs delivered the opinion of the court.

On September 18, 1901, the appellee, William Ross, sued the appellant, Baltimore & Ohio South Western Railroad Company, in the Circuit Court of Cass County, in an action on the case to recover damages alleged to have been sustained by him on account of injuries inflicted upon twenty fat cattle which he shipped on December 11, 1900, from Philadelphia Station, on the line of its road in said county, to Union Stock Yards in Chicago, Illinois, by reason of the negligent manner that the car in which the cattle were carried, was handled while being drawn from the station to the Stock Yards, and the loss of sixty cents per one hundred pounds, the difference in the market price of the cattle when sold, from what it was when they should have been sold but for the unnecessary and unreasonable length of time consumed in transporting them from the point of receipt to their destination.

The trial of the case by jury resulted in a verdict in favor of the appellee for $110 damages.

The appellant, having moved for a new trial and its motion being denied, excepted, has brought the case to this court by appeal, and to effect a reversal of the judgment, argues for error that the court refused to admit proper and material evidence offered by it, refused a proper instruction requested by it, gave improper instructions at the request of the appellee, and improperly refused its motion for a new trial when the verdict and judgment were not supported by the evidence and the law applicable thereto.

The declaration charged that on December 11, 1900, the appellant was a common carrier of livestock for hire, and on that day received from appellee at its station in Philadelphia, Cass county, Illinois, twenty fat cattle, which it agreed to safely and promptly carry from there to the Union Stock Yards, Chicago, Illinois, but failed to do so in this, that the car in which the cattle were carried from place received to destination, was so carelessly, negligently and slowly handled on the way, that the cattle were

thereby greatly jaded and reduced in size, and their market price reduced sixty cents per one hundred pounds, which necessarily occasioned appellee to lose a large sum of money on the sale of the cattle at said yards, to wit, $200.

The appellant pleaded the general issue only, upon which issue was joined.

The evidence disclosed that the appellee delivered the cattle to the appellant and it received them at the time, place and for the purpose charged in the declaration, and that they were delivered and received under a special shipping contract in writing, executed at the time by both the appellee and the appellant, and contained, among other provisions, the following :

That in consideration of the appellant agreeing to haul the cattle at a reduced rate and to furnish free transportation to the appellee from Philadelphia, Illinois, to Chicago, Illinois, the appellee was at his sole risk and expense to load and take care of, and to feed and water the cattle while being transported, whether delayed in transit or otherwise.

That the appellant or any connecting carrier should not be liable for or on account of any injury sustained by the cattle for delay occasioned from causes beyond their control.

That in the event of any unusual delay or detention of the cattle shipped, caused by the appellant or any of its connecting carriers, that the appellee would accept, as full compensation for all loss or damages sustained thereby, the amount actually expended in the purchase of food and water for the cattle while so delayed.

And that no claim for damages which might accrue to the appellee under this contract, should be allowed or paid by the appellant or sued for in any court by the appellee, unless a claim for such loss or damage should be made in writing, verified by the affidavit of the appellee or his agent, and delivered to the general freight agent of the appellant, at his office in the city of Cincinnati, Ohio, within five days from the time the cattle were removed

B. & O. S. W. R. R. Co. v. Ross.

from the car in which they were shipped; and that if any loss or damage occurred upon the line of a connecting carrier, that such carrier should not be liable unless a claim should be made in like manner and delivered in like manner to some proper officer or agent of the carrier on whose line the loss or injury occurred.

And it further appears that the cattle were loaded in time to be taken from Philadelphia to Springfield, Illinois, and to make connection there with either of two evening fast freight trains of the Illinois Central Railroad Company, which, under ordinary circumstances, would get them to the Union Stock Yards in Chicago, Illinois, between six and seven o'clock the next morning.

Philadelphia is on the line of appellant's railroad, about twenty-six miles west of Springfield, Illinois. Pleasant Plains is also on appellant's railroad about nine miles east of Philadelphia. Owing to a long and severe drought which had existed in the locality from which the cattle were shipped and to which they were to be taken, water was very scarce at this time, and when appellant's train, on which they were being transported, reached Pleasant Plains, the water for the locomotive pulling the train was so low that more must be gotten for it; and it being impossible to get it there, the train was left at that place until the locomotive went to Springfield, got water and returned for it. By reason of this delay and the length of time consumed in switching after the train arrived at Springfield, the car in which the cattle were, was not delivered to the Illinois Central Railroad Company there until about ten o'clock at night of the day the cattle were received, which was after the two fast freight trains for that evening on that railroad, which usually arrived in Chicago between six and seven o'clock the next morning, were gone. The cattle were taken by the Illinois Central on an ordinary freight train which left Springfield about eleven o'clock the same night the cattle were received, and it did not get them to the Union Stock Yards in Chicago until about midnight of the succeeding night, when they were unloaded

and sold on the market there the next day.   This train, because of its being an ordinary freight, did considerable switching on the way and frequently sidetracked and waited a considerable time for other trains to pass it; the effect of all of which was to jade and fatigue the cattle so that they lost considerable in weight.   The market price of the cattle at the Union Stock Yards was considerable lower December 13, 1900, the day the cattle had to be sold, than it was on the preceding day when they should have been sold but for the delay aforesaid.

There is no evidence but that the special written contract under which the cattle were shipped was fairly and understandingly entered into by the appellee and the appellant, and it was put in evidence by each of them without objection.

Appellee was transported on the same train with the cattle from Philadelphia, Illinois, to Chicago, Illinois, free of charge; and he did not show or offer to show that he or any one for him had made a verified claim in writing upon any agent of the appellee or of the Illinois Central Railroad Company for any damages which he had sustained on account of the delay in transporting the cattle or the negligent manner in which they were handled on the journey at any time before he began this suit.

Over the objection and exception of the appellant, the court instructed the jury that "if the plaintiff delivered to the defendant a car load of fat cattle for shipment to Chicago on the 11th day of December, 1900, and that in the regular course of its business it should have delivered said car of cattle by its connecting lines into market in Chicago in time for the market on the 12th day of December, and if by the fault and negligence of the defendant the cattle were delayed in transit and not delivered by the defendant to its connecting lines in time for its regular daily freight train for Chicago. and in consequence thereof said cattle were not delivered at the Union Stock Yards until the 13th, then the defendant is liable to the plaintiff for such damages as the evidence shows he has sustained in consequence of the negligence of the defendant."

And upon objection of the appellee, and an exception of the appellant, the court refused to give the following instruction for the appellant:

"If the jury find from the evidence that when the plaintiff shipped his cattle he entered into a contract with the defendant for the shipment of such cattle to Chicago, and in such contract agreed that no claim for damages growing out of such shipment should be sued for unless a claim for such damages were first made in writing, verified by affidavit, and delivered to the general freight agent of the defendant at Cincinnati, within five days from the time the cattle were removed from the car, and if you further find that the plaintiff did not make such demand in writing, verified by affidavit, and deliver it to the said freight agent, before commencing this suit, then the plaintiff can not maintain this suit, and your verdict should be for the defendant."

The contention of counsel for the appellant is that the evidence fails to show that the appellant or its connecting carrier was guilty of any such negligence in transporting the cattle as renders it liable to the appellee for anything, but if it did, then under the terms of the shipping contract, the appellee is limited to recovering merely the amount he incurred for feeding and watering the cattle on the journey, upon his making claim therefor in accordance with the express terms of the contract, which he failed to make, and therefore he can not recover in this case.

While the counsel for the appellee, in support of the judgment, insists that under the evidence the appellant was grossly negligent in transporting the cattle, against which it can not relieve itself by the terms of the shipping contract, and that if it could, it is not entitled to the benefits thereof in this action for the reason it did not specially plead them, and that the provisions of the shipping contract can not be availed of by the appellant as a defense to this action under the general issue.

The declaration does not charge that the appellant willfully delayed the cattle or willfully injured them while transporting them, nor any such acts of negligence as manifest a reckless disregard of the rights of others or would

be equivalent to willful negligence, and therefore the appellee will not be heard to insist that he is entitled to have the jury find or the court hold that the appellant was guilty of gross negligence in this case, if for no other reason than that he has not charged it in his pleadings.

In Illinois Central R. R. Co. v. Morrison, 19 Ill. 136, it was held that " railroad companies have a right to restrict their liability. as a common carrier, by such contracts as may be agreed upon specially, they still remaining liable for gross negligence or willful misfeasance, against which good morals and public policy forbid that they be permitted to stipulate; " which was approved in same company v. Read, 37 Ill., where, at page 510, the above language used in the Morrison case is quoted and approved, and that doctrine is sustained in Field v. C. & R. I. R. R. Co., 71 Ill. 458, and in Arnold v. I. C. R. R. Co., 83 Ill. 273.

In C. & N. W. R. R. Co. v. Chapman, 133 Ill., at p. 104 of the opinion, it is said:

" The act in respect of common carriers, approved March 27, 1874, provides that ' whenever any property is received by a common carrier to be transported from one place to another within or without this state, it shall not be lawful for such carrier to limit its common-law liability safely to deliver such property at the place to which the same is to be transported, by any stipulation or limitation expressed in the receipt given for such property.' This is substantially re-enacted in Sec. 33 of Chap. 114, relating to railroads. These statutes do not, in terms, prohibit common-carriers from limiting their common-law liabilities by contract with the owner of property delivered for transportation."

We think, therefore, that the special contract under which the cattle were shipped, was a valid and binding obligation upon the appellee in this case, at least to the extent of its provisions.

That in the event of any unusual delays or detention of said livestock, caused by the negligence of said carrier or its employes, or its connecting carriers or their employes, or otherwise, the said shipper agrees to accept, as full compensation for all loss or damage sustained

thereby, the amount actually expended by said shipper in the purchase of food or water for the said stock while so detained; that no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the said shipper, unless a claim for such loss or damages shall be made in writing, verified by the affidavit of said shipper or his agent, and delivered to the general freight agent of the said carrier at his office in the city of Cincinnati, Ohio, within five days from the time said stock is removed from said car or cars, and that if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner and delivered in like time to some proper officer or agent of the carrier on whose line the loss or injury occurred. Black v. Wabash, St. Louis & Pacific Ry. Co., 111 Ill. 351, and Cleveland, C., C. & St. L. Ry. Co. v. Newlin, 74 Ill. App. 638.

The reason for holding a stipulation like this when voluntarily and understandingly entered into by the shipper as binding upon him, is well stated in the Black case, *supra*, to be that " the manifest object of such a provision is to force those claiming to be damaged by the carrier's negligence to promptly present their claims for adjustment while the facts and circumstances upon which they are based are fresh in the memories of the parties and witnesses, and to prevent being harassed or imposed upon by dishonest claimants. We see nothing improper in requiring such claims to be verified by affidavit."

The insistence of the counsel for the appellee that the court properly refused to permit the appellant to prove that no verified claim was ever made upon any agent, either of the appellant or of its connecting carrier, for the reason that the special shipping contract was not specially pleaded, and its provisions could not be shown in this case under the general issue, is without force, for the reason that the action being case, and both the appellee and the appellant having introduced the contract in evidence, and each

62    APPELLATE COURTS OF ILLINOIS.

VOL. 105.] Kellogg Newspaper Co. v. Corn Belt Nat. B. & L. Ass'n.

treated it as proper evidence in the case, as they should, that provision was available as a defense to this action, under the general issue, without having been specially pleaded. Wabash, St. L. and P. Ry. Co. v. Black, 11 Ill. App. 465, and Coles & Co. v. L. E. & St. L. R. R. Co., 41 Ill. App. 607.

It is not claimed that there was any verified claim, in writing, made upon the general freight agent of the appellant by the appellee or any one for him, for the damages claimed to have been sustained by him and growing out of the shipment of the cattle, at any time before this suit was commenced, as is provided by the terms of the contract, and therefore the court erroneously refused to permit the appellee to prove that fact as a defense under the pleadings; and as the appellee had failed to prove that he had made such claims, it was improper for the court to give, at his request, the instruction first above quoted, and to refuse to give the instruction second above quoted, as requested by counsel for appellant.

For the errors above indicated, we will reverse the judgment of the Circuit Court in this case and remand it to that court for such further proceedings as to law and justice appertain.