# J. M. Coats et al. v. Chicago, Rock Island & Pacific Railway Company.

## Gen. No. 13,243.

1. COMMON CARRIER—*effect of statute prohibiting limiting of common law liability.* The statute of this state prohibiting a carrier from limiting its liability is but declaratory of the common law.

2. COMMON CARRIER—*common law obligation to transport.* By the common law a common carrier who receives goods for transport marked for a particular place, is *prima facie* obligated to carry and deliver such goods to the place for which they are marked, even though such place be beyond the terminus of its own line.

3. COMMON CARRIER—*how common law obligation to transport may be limited.* The common law obligation of a carrier to transport can only be limited by an express agreement, and the burden to prove such express agreement rests upon the carrier.

4. COMMON CARRIER—*summary of law of Illinois in regard to general and restricted obligations of carrier to transport.* It is the law in this state, first, that the liability of a common carrier is that imposed by the common law; second, that a restriction in a bill of lading to the contrary is insufficient of itself to relieve the carrier from the liability created by the common law; third, a limitation of liability, to be effective, must rest in an express contract; fourth, that the *onus* of proving an exemption from the liability imposed by the common law is on the carrier; and, fifth, the determination of the question of fact as to whether or not an express contract limiting the carrier's liability exists, is for the jury.

5. BILL OF LADING—*what tends to show non-assent to limitation of liability contained in.* The non-delivery of a bill of lading until several days after receipt by the carrier of the goods shipped, tends to prove the non-assent by the shipper to the restrictive provisions contained in such bill of lading.

6. SISTER STATE—*when statute of, need not be pleaded. Held,* in this case, that it was not necessary to plead the statute of a sister state in order to avail thereof as a defense.

7. SISTER STATE—*presumption as to law prevailing in.* In the absence of proof it will be presumed that the common law exists in a sister state or else that its laws are similar to the laws of this state.

8. JUDICIAL NOTICE—*of what not taken.* Judicial notice will not be taken of the statutes of a sister state; to be availed of they must be proven as other facts.

9. COMITY—*when law of sister state will not be enforced in Illinois.* Notwithstanding a contract may have been made in another

state which is affected by a statute, yet the courts of this state will not follow a decision construing such statute where such decision is unsound and places a construction upon such statute, other and different than that which has been given to a like statute existing in this state.

10. NEW CAUSE OF ACTION—*when amendment does not set up.* A new cause of action is not set up by alleging in the amendment that the contract in virtue of which the right of action was grounded, was in writing,—the original declaration being silent as to whether the contract was oral or written.

11. STATUTE OF LIMITATIONS—*when ten-year provision applies.* The ten and not the five-year limitation applies to an action instituted against a carrier for failure to observe its common law obligation to transport; where a bill of lading was issued upon or soon after the receipt of the property sought to be transported, and this notwithstanding a portion of such bill of lading is held to be void.

Action on the case. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed May 31, 1907. Rehearing denied and opinion modified and refiled June 20, 1907.

E. F. THOMPSON, for appellants.

M. L. BELL, for appellee; BENJAMIN S. CABLE, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a directed verdict in favor of the defendant, appellee.

The question here involved is the liability of the defendant railway company under certain bills of lading to carry certain cars of potatoes from points in the State of Iowa upon the line of the road of the defendant to the city of Philadelphia on the line of a connecting railroad. Plaintiffs were consignors of the potatoes, and Pancoast & Griffith, dealers in potatoes at Second and Masters streets, Philadelphia, were consignees. The city of Chicago was the point on the line of defendant where the cars were to be diverted on their journey east to another road there connecting

with the defendant road. The usual time for completion of the journey from the point of shipment to destination is about 5 or 6 days. But either from delays in transit or by reason of detention in the yards of the railroad at Philadelphia, the potatoes were not delivered until three or four weeks from the date of shipment, at which time, being perishable, the potatoes were unfit for human consumption.

As the questions here presented for review are of law, and not of fact, and as the conclusions to which we have arrived necessitate a remanding of the cause for a new trial, we shall refrain from any discussion, in this opinion, of the facts, leaving such questions for the determination of the trial court within the principles of law here announced.

The bills of lading issued by the defendant to the plaintiffs restricted in form the liability of the defendant. They recite that the potatoes were received "to be transported over the line of this road to Chicago station, or to such company or carriers (if the same are to be forwarded beyond said station) whose line may be considered a part of the route to the place of destination; *it being distinctly understood that the responsibility of this company as a common carrier shall cease at the said station.*"

There is evidence tending to establish as a fact that the bills of lading were not delivered to the consignors for several days after the shipments were made. If this is the fact, it is material only for the purpose of ascertaining whether or not plaintiffs assented to the attempted limitation of the common law liability of defendant as a common carrier.

The common law liability of the carrier is safely to carry and deliver the goods received for transportation to the place of consignment, regardless of the fact that such place is beyond the terminus of its own road. This statement is not and cannot be controverted. The statute of this state prohibiting the carrier from limiting its common law liability in this regard is but

declaratory of the common law. It is couched in the
following terms—sec. 102, chap. 114, R. S. Starr &
Curtis, ed. 1896: ''That whenever any property is
received by any railroad corporation to be transported
from one place to another, within or without this
state, it shall not be lawful for such corporation to
limit its common law liability safely to deliver such
property at the place to which the same is to be trans-
ported, by any stipulation or limitation expressed in
the receipt given for the safe delivery of such prop-
erty.''

The rule of the common law is well stated in Fortier
v. Pennsylvania Company, 18 Ill. App. 260, in the
following language: ''By the rules of the common
law, as expounded by the highest judicial tribunal of
this state, the receipt for transportation by a railroad
company of goods marked for a particular place, is
to be construed *prima facie* as a contract to carry and
deliver the same at the place for which they are
marked, though beyond the terminus of its own line.''

This duty cannot be varied or the obligation im-
posed by the common law limited short of an express
agreement. The fact of such restrictive clause ap-
pearing in the receipt is not *ipso facto* evidence of
assent by the consignor. That the receipt was ac-
cepted with the knowledge and understanding of the
restrictive clause is a matter of proof and must be
substantiated by evidence establishing the fact. The
burden of such proof rests upon the carrier, as an
affirmative, substantive fact. The ultimate fact is a
question for the jury to find. Chicago & N. W. Ry.
Co. v. Simon, 160 Ill. 648; Wabash R. R. v. Thomas,
222 Ill. 337.

As said in Illinois Central v. Frankenberg, 54 Ill.
96: ''By the law of common carriers their liability
was fixed on the receipt of the goods to be carried.
They are insurers of the goods, and if not delivered
at their place of destination they are accountable for
them, and when called upon to account for them the

Coats v. C., R. I. & P. Ry. Co.

*onus* of proof is upon them, and they are chargeable with their value, unless the loss was caused by a force superior to human agency, which no foresight could have guarded against, or by the public enemy."

Again it is said in M. D. Trans. Co. v. Theilbar, 86 Ill. 71: "The doctrine is too well settled in this court to now admit of discussion, that a clause in a receipt or bill of lading exempting the carrier from a common law liability, is not binding on the shipper unless it appears that the shipper knew of and assented to the exemption, and that this is a question of fact on the trial of the case," citing cases.

There is no evidence in the record that plaintiffs knew or assented to the limitation of the liability in the bills of lading, and the evidence tending to prove that delivery of the bills of lading was not made to the shippers until several days subsequent to the receipt of the potatoes, strongly tends to sustain the contention of plaintiffs that no such consent was yielded.

This court, in the case of Pennsylvania R. R. v. The John Anda Company, 131 Ill. App. 426, said: "The limitation of appellant's liability contained in the bill of lading does not, in the absence of proof that such limitation was brought to the attention of the shipper and assented to by him, operate to relieve appellant of its common law liability to carry and deliver the consigned property to the destination in the bill of lading. Such liability can not be limited by notice. Nor can a carrier limit its common law liability safely to deliver the consigned property at the designated place of destination by any limitation expressed in its receipt for the property. The right to make any such limitation in a receipt is prohibited by sec. 102, chap. 114, and sec. 1, chap. 27, R. S. Starr & Curtis's ed. It has, however, been held in this state that the carrier's liability by force of the common law may be limited by an express contract. Chicago & Northwestern Ry. v. Chapman, 133 Ill. 96; Field v. C., R. I. & P., 71 Ill. 458."

It is the law in this state: First, that the liability of a common carrier is that imposed by the common law; second, that a restriction in a bill of lading to the contrary is insufficient of itself to relieve the carrier from the liability created by the common law; third, a limitation of liability, to be effective, must rest in an express contract; fourth, that the *onus* of proving an exemption from the liability imposed by the common law is on the carrier; and fifth, the determination of the question of fact as to whether or not an express contract limiting the carrier's liability exists, is for the jury.

But it is urged by defendant that the bills of lading were made in the State of Iowa, and that as contracts made in that state, they must be interpreted in this forum in accord with the law of the state where the contract was made. The Iowa statute is similar to our own, and in no sense narrows the carrier's common law liability. It is section 2074 of the Iowa Code, and reads: "No contract, receipt, rule or regulation shall exempt any railway corporation engaged in transporting persons or property from the liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made or entered into."

This statute was not pleaded as a defense, neither do we think it was necessary to so plead it. There being no material distinction between the statutes of the two states, the whole question resolved itself into one of construction. While it was not necessary to plead the Iowa statute, yet if the interpretation of the statute by the Iowa courts was sought to be invoked as a rule of construction to be applied in the *lex forum*, it was necessary to prove as a fact the law of the foreign jurisdiction by introducing as evidence the decisions of its tribunals on that subject. The learned trial judge proceeded upon the erroneous assumption that the case of Mulligan v. Ill. Central R. R. Co., 36 Ia. 181, was before him as evidence. The place for

such evidence is the bill of exceptions, which we have scanned in vain in an effort to find it. It is not enough that the learned trial judge should have had the case before him in rendering his decision. To make it evidence of a fact, which the laws of foreign jurisdictions are, it must be preserved in the bill of exceptions. While the court in Christiansen v. Graver Tank Works, 223 Ill. 142, held that in certain cases neither statutes nor the reported decisions of other states need be pleaded, but might be given in evidence under the general issue, yet such ruling rested upon the ground that such laws and decisions should be put in evidence in the same manner and with like effect as any other question of fact. We are not permitted to take judicial notice of the laws of a foreign state when such laws are necessary to be proven as facts, unless they appear with the other facts in the case in the bill of exceptions found in the record. The rule is, as stated in Crouch v. Hall, 15 Ill. 263, "As a general principle courts will not take judicial notice of the laws of another country, but they must be proved as facts." Dearlove v. Edwards, 166 Ill. 619.

The citation from Hartmann v. Louisville, etc., 39 Mo. App. 97, is apt and forcible in its application here: "The law of a foreign state is to be proved as a fact, and whether it has been proved must be determined by the evidence which has been received in the trial court for that purpose; otherwise a case depending upon foreign law might be determined according to another conception of the law in the Appellate Court by reason of the general learning of the judges of the Appellate Court in that law. This would be equivalent to the introduction of new evidence in the Appellate Court upon the question in issue, which is contrary to the fundamental rules of Appellate procedure."

It logically follows that the court of review, in its interpretation of the foreign law, must be restricted to those decisions appearing in the record as evidence

heard in the trial court, for to look further would
be tantamount to receiving additional evidence and
violate the rule governing courts of review restricting
their research as to questions of fact to those shown
by the evidence in the record.

It is therefore patent that the interpretation of sec-
tion 2074 of the Iowa Code by the courts of Iowa, is
not before us. In the absence of proof, we may as-
sume that either the common law obtains in Iowa, or
else that its laws are similar to the laws of this state.
Juilliard v. May, 130 Ill. 87.

For the purpose of illustrating the point, we will,
for the time being, assume that the Mulligan case,
*supra,* is in the record. That decision is evidently
contrary to the interpretation of our Supreme Court
upon a like statute. We have grave doubts as to its
soundness. In the light of our own decisions and those
of other courts, as to the common law liability of car-
riers, this statute of Iowa, enacted for the sole pur-
pose of setting at rest and withdrawing from the
realm of doubt and making certain that which might
seem otherwise, is by the Mulligan decision nullified.
The evident purpose of this statute has, by judicial
decision, been rendered abortive. If the construction
of it under the Mulligan case is correct, then in the face
of rendering plain the legislative intent not to restrict
the common law liability of carriers, it has, by judi-
cial construction served the purpose of suspending the
unrestricted liability to carry and deliver goods con-
signed for transportation safely, imposed by the com-
mon law. Are the courts of this forum bound to fol-
low a decision of this character, which appeals to
them as being unsound?

We are not without authority of the highest char-
acter foreshadowing our duty in such a situation.
The law on this subject has been lucidly stated by
the Supreme Court of Iowa.

In Dorr Cattle Co. v. National Bank, 127 Ia. 153,
the court say: "In the instant case no right created

by statute was asserted to have been violated; the rules of the common law alone were invoked. These obtained with equal force in Illinois, Iowa, and other states. They have been adopted, in so far as applicable, from the same common source, and must be necessarily assumed to be the same everywhere. Mistakes in interpretation may be made, but the principles of justice go on forever. Every court will determine for itself what these may be, as found in the common law." Franklin v. Twogood, 25 Ia. 520; National Bank of Iowa v. Green, 33 Ia. 140; Johnson v. Railway, 91 Ia. 248.

The court say in Hoyt v. Thompson, 19 N. Y. 207: "The statutes and laws of a country have no intrinsic extra territorial force. They bind only its own citizens, and citizens of other countries while within its jurisdictional limits, and they bind directly only property within those limits. They do not bind property out of its territory or persons not resident therein. But no nation, on any recognized principle of comity is, orally or otherwise, bound to enforce foreign laws (statutory) prejudicial to its own rights or the rights of its citizens."

And in Roads v. Webb, 91 Me. 406, that "Where the general principles of commercial law are to be applied to a contract, the court of the forum will apply those principles according to its judgment, notwithstanding that it may have been held differently where the contract was made."

And in St. Nicholas Bank v. State Bank, 128 N. Y. 26, "That while the statute laws of another state will be followed by the court of the forum, that it will follow its own precedents in the expounding of the general common law applicable to commercial transactions."

The case of Faulkner v. Hart, 82 N. Y. 413, is very instructive on the question of the limitation environing comity between the states in following the laws of each other. Among other things the court say: "As

we have seen, the United States Supreme Court have refused to sustain the decision of the state court when violating a great principle; and the rule is a sound one which upholds the position that the decisions of the state court should not be followed to such an extent as to make a sacrifice of truth, justice and law. It is upon a principle of comity, that one state recognizes and permits the operation of the laws of another state within its own jurisdiction, where such law is not contrary to its own rules of policy, or to abstract right, or the promotion of justice and morality; but this principle should never be carried to the extent of holding that a suitor in its courts is debarred from the maintenance of his just rights according to its well-established decisions and laws, and the general principles of the common law which it has fully recognized and which are almost universally regarded and accepted, in reference to the question presented, wherever the common law prevails. No rule of comity demands any such sacrifice in the business intercourse between the people of the different states, and great injustice might follow by yielding to such a principle, and in sustaining a rule of law which was wrong in itself, hostile to the policy and law of the state where the contract was made, and adverse to the general current of authority elsewhere.''

The Iowa statute being similar to our own statute on the same subject, and both being declaratory of the common law, will be construed, interpreted and applied in accordance with the law of this forum wherever the decisions of the Iowa courts are in conflict with or contrary to the law as expounded by the courts of this state.

Appellees did not introduce a new cause of action by the amendment which stated that the contract, in virtue of which the right of action was grounded, was in writing. The cause of action was the identical one averred in the original declaration. The amendment was in avoidance of the plea of the five year limita-

Coats v. C., R. I. & P. Ry. Co.

tion statute. The same result—an avoidance of that plea—could have been attained by a replication in confession and avoidance. The rights and duties of the parties to each other rested in writing according to its legal import and interpretation, and the fact that by legal construction the clause of the writing attempting to limit the liability of appellee imposed by the common law was ineffectual for that purpose in no way made void the writing or operated to remove it as the foundation upon which the rights of appellants rest. The proof fails to sustain the plea of the ten year limitation statute, and it follows that appellants failed to sustain the affirmative defense interposed by that plea.

For the errors indicated the judgment of the Superior Court is reversed and the cause remanded for a new trial in accordance with the law as here declared.

*Reversed and remanded.*