[No. 5936.]

## ATCHISON CO. v. BALDWIN ET AL.

1. PRINCIPAL AND AGENT—*Implied Authority of Agent*—Authority to deliver live stock to a common carrier for shipment includes authority to do all that is necessary, to accomplish this purpose. Both the shipper and his agent having experience in such matters, the agent, in the absence of notice to the carrier to the contrary, will be presumed to have authority to, bind the shipper by a valid contract of shipment.

2. CONTRACT—*Signing Without Reading*—That one of large experience in such matters executes a contract for the shipment of a cargo of cattle without reading it, and because he is told by the agent of the railway company that he must sign it, as it will be his pass to go with the cattle, is no evidence of either mistake, fraud, or duress in procuring its execution.

3. COMMON CARRIER—*Stipulation Exonerating Carrier*—A stipulation in a contract for the carriage of live stock that as a condition precedent to the shipper's right to recover damages for any loss or injury to the animals during transportation, or at any place where the same may be loaded or unloaded, etc., the shipper will give notice in writing of his claim to some officer of the company, or the nearest station agent, before the stock shall have been removed from the place of delivery, slaughtered, or intermingled with other stock, and will not move such stock, etc., until three hours after giving the notice, is almost universally held valid.

So a stipulation that no suit or action for any damages arising out of the shipment, or any contract pertaining to the same, or the furnishing of facilities therefor, shall be sustained, unless commenced within six months next after the loss or damage shall have occurred.

4. PLEADING—*What Must Be Specially Pleaded*—One who would relieve himself of the terms of an express contract on the ground of mistake, fraud, duress, or false practice in procuring its execution, must plead specially the facts upon which he would support this contention.

5. ——*General Denial—Effect—*A general denial of the execution of a contract counted upon, will not admit evidence that the contract was signed without reading it.

Or the waiver of performance of a condition in the contract of a common carrier, requiring a certain notice of the claim asserted against him.

Or the waiver of a condition in such contract that an action must be brought within reasonable time, expressly limited therein.

*Appeal from Denver District Court.*—Hon. JOHN I. MULLINS, Judge.

Mr. HENRY T. ROGERS, Messrs. ROGERS, ELLIS & JOHNSON and PIERPONT FULLER, for appellant.

Mr. JOHN T. BOTTOM, for appellees.

Appellee, as plaintiff, brought suit against appellant to recover damages in the sum of $1,722.00, claimed to have been sustained on a shipment of cattle from Holbrook, Arizona, to the city of Denver, as the result of the alleged negligence of the defendant company in transporting the cattle between these points, which plaintiffs had delivered to it for that purpose. The negligence charged was to the effect that the defendant company kept the cattle on the cars thirty-six hours without food or water, by reason of which they were greatly damaged. The cattle were delivered for shipment on the 17th day of August, 1901, and delivered to plaintiffs at Denver four days later. This action was commenced July 3rd, 1903.

The defendant filed an asnwer, denying the negligence charged, and alleged that the shipment was made subject to special contracts, which provided that, in order that any loss or damage might be fully and faily investigated, there was a stipulation as a condition precedent to the right to recover damages for loss or injury to the stock during the transportation thereof, that the shippers, or agent in charge of the stock, would give notice in writing of their claim therefor to some officer of the company, or to the nearest station agent, before such stock was removed from the place of destination, or from

the place of delivery of the same, and before it was com-
mingled with other stock, and that a failure to comply with
the terms of this condition should be a complete bar to a recov-
ery for any and all such damage. The answer further alleged
that the contracts in question also provided that no suit should
be brought against the defendant for the recovery of any dam-
ages accruing or arising out of the shipment of the stock, un-
less such action should be commenced within six months after
the loss or damage occurred. It is then charged that the stock
was unloaded at the respective points of destination, and by
the plaintiffs removed therefrom, and intermingled with other
stock, without any notice, in writing, or at all, upon their part
that they claimed any damage for loss or injury to such stock
during the transportation thereof.

For replication the plaintiffs denied each and every alle-
gation of new matter set out in the answer, except one, which
is not material to any question involved; and admitted that no
notice in writing was given any officer of the company, or the
station agent at the point where the shipment was delivered.
The case was tried to the court without the intervention of a
jury, and taken under advisement. Later, the court found the
issues in favor of the plaintiffs, and rendered judgment in the
sum of $1,722.00, from which the defendant has appealed.

There was testimony on the part of the plaintiffs the pur-
pose of which was to prove that the defendant had been guilty ·
of negligence in transporting the shipment.

The contracts referred to in the answer were introduced
in evidence, and contained the following stipulations:

"Eighth. In order that any loss or damage to be claimed
by the shipper may be fully and fairly investigated and the
fact and nature of such claim or loss preserved beyond dispute
and by the best evidence, it is agreed that as a condition prec-
edent to his right to recover any damages for any loss or in-
jury to his said stock during the transportation thereof, or any
place, or places, where the same may be loaded or unloaded ·
for any purpose on the company's road, or previous to loading

thereof for shipment, the shipper or his agent in charge of the stock will give notice in writing of his claim therefor, to some officer of said company, or to the nearest station agent * * * before such stock shall have been removed * * * from the place of delivery of the same to the consign, and before such stock shall have been slaughtered or intermingled with other stock, and will not move such stock from said station or stockyards until the expiration of three hours after the giving of such notice, and a failure to comply in every respect with the terms of this clause shall be a complete bar to any recovery of any and all such damages. * * *."

"Ninth. It is further agreed that no suit or action against the company for the recovery of any damages accruing or arising out of said shipment or of any contract pertaining to the same, or the furnishing of facilities for such shipment, shall be sustained in any court of law or equity unless such suit or action shall be commenced within six months next after the loss or damage shall have occurred. The failure to institute suit within said time shall be deemed conclusive evidence against the validity of such claim, or cause of action, and shall be a complete bar to such suit."

This contract further provided that free transportation should be furnished the shipper, or his agents, in charge of the stock from the point of shipment to the place of destination and return.

C. L. Truax had charge of, and accompanied, the shipment through to Denver. He testified that he was in the employ of the plaintiffs at the time of the shipment, and had been for a number of years off and on, and superintended the loading. He also testified that at this time he had had about sixteen years' experience in handling cattle on railroads. He signed the contracts.

C. O. Howe, one of the plaintiffs, testified that he was present when the cattle were loaded. He was in charge of the ranch belonging to the partnership, and had shipped between three and five thousand cattle annually from Arizona to the

Union Stock Yards in Denver, for a period of fifteen to eighteen years.

Truax, when interrogated by counsel for plaintiffs regarding the circumstances under which he signed the contracts, said he signed where the agent told him; that the agent said he had to sign as the contract was his pass over the road; that he did not read the contracts nor was he asked to read them. It also appears from his testimony that he had had some experience in railroading as an employe of the S. F. P. as a wrecking foreman, and in the car department.

Over the objection of defendant, Howe was permitted to testify that he handed the claim into the Santa Fe office in Denver after the shipment was delivered, and that negotiations looking towards a settlement were had with the company, extending over a considerable period, and as late as six months prior to the time he was testifying.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Truax, who signed the shipping contracts, was in the employ of plaintiffs, and had been for a number of years. He had charge of the shipment and superintended the loading. Authority to deliver stock to a common carrier for shipment includes all the necessary and usual means of carrying it into effect, so that the agent of the owner entrusted with its shipment, in the absence of notice to the carrier to the contrary, will be presumed to have authority to bind the shipper by a contract of shipment, in so far as such contract is valid.—*Nelson v. Hudson River R. R. Co.,* 48 N. Y. 498; *Hill v. Boston, H. T. & W. R. Co.,* 144 Mass. 284.

The evident purpose of the testimony of Truax with respect to the circumstances under which he signed the shipping contracts was to relieve the plaintiffs from the terms and conditions thereby imposed. It is not charged by any pleading on the part of plaintiffs that the defendant company was guilty of any fraud, duress or bad faith in obtaining these contracts,

or that they were executed by mistake.  A defense upon either of these grounds, to be available, must be pleaded by stating the facts upon which it is predicated.—*Starbird v. Cranston,* 24 Colo. 20; *Arthur v. Gard,* 3 Colo. App. 133.

A mere denial of the execution of the contracts was not sufficient to make an issue on either one of these questions; consequently, the testimony referred to was not competent.

But, aside from this conclusion, the testimony of Truax to the effect that he was told by the agent that he had to sign; that the contract was his pass; that he did not read, nor was he asked to read, the contracts, does not establish either mistake, fraud or duress.  To hold that from these circumstances he was induced to sign contracts by fraud, or duress, or that from his sixteen years' experience in handling cattle on railroads, he did not know what he was signing when he signed the contracts, would attribute to him a lack of intelligence wholly at variance with the intellectual ability which his examination as a witness disclosed he possessed.

In this connection it is also proper to note, that one of the plaintiffs was present when the cattle were loaded.  He was the manager of the partnership business.  For a period of fifteen or eighteen years he had been engaged in shipping between three and five thousand cattle annually from Arizona to Denver.  With this experience it must be presumed he knew that Truax, the agent of the partnership, would be required to sign contracts for the shipment of which he was in charge.

Plaintiffs admit, by their replication, that they did not give written notice of any claim for damages before the cattle were removed from the place of delivery.  The record discloses that whatever cause of action plaintiffs had against the defendant accrued August 21st, 1901.  Their action was not commenced until July 3rd, 1903.  The next question to consider, then, is, whether or not the stipulations in the contracts, requiring written notice to be given of a claim for damages, before the cattle were removed from the place of delivery, and that suit for any claim for damages must be brought within six

months after damage to the shipment occurred, and the further provision incorporated in each of these stipulations to the effect that a failure to comply therewith shall be a complete bar to any action to recover such damages, are valid.   Stipulations of this character have been so well-nigh universally upheld as valid, and it has so often been decided that a failure to comply therewith bars an action for damages, unless the period within which an action is to be brought is so short as to be unreasonable, or that the conditions thereby imposed have been waived, that it is only necessary to refer to a few of the many cases sustaining them.—*Adams v. C. & S. Ry. Co.*, 49 Colo. 475, 113 Pac. 1010; *Gulf, Colo. & S. F. Ry. Co. v. Trawick*, 68 Tex. 314; *Gulf, Colo. & S. F. Ry. Co. v. Gatewood*, 79 Tex. 89; *Central Vt. R. Co. v. Soper*, 59 Fed. 679; *Thompson v. C. & A. Ry. Co.*, 22 Mo. App. 321; *Riddlesburger v. Hartford Ins. Co.*, 7 Wall. 386; *Goggin v. K. P. Ry. Co.*, 12 Kan. 416; *Sprague v. Mo. Pac. Ry. Co.*, 34 Kan. 347; *W. & W. Ry. Co. v. Koch*, 47 Kan. 753; *Kalina v. R. Co.*, 69 Kan. 172; *A. T. & S. F. R. Co. v. Crittenden*, 44 Pac. (Kan.) 1000; *Smith v. C. R. I & Pac. Ry. Co.*, 112 Mo. App. 610; *Dawson v. St. L. K. C. & N. Ry. Co.*, 76 Mo. 514; *U. S. Express Co. v. Harris*, 51 Ind. 127; *Southern Ry. Co. v. Adams*, 42 S. E. (Ga.) 35; *Express Co. v. Caldwell*, 21 Wall. 264; *B. & O. S. W. Ry. Co. v. Ross*, 105 Ill. App. 54; *The Westminster*, 127 Fed. 630; *Hatch v. Minn., St. P. & S. S. M. Ry. Co.*, 197 N. W. (N. Dak.) 1087; *Southern Ry. Co. v. Tollerson*, 59 S. E. (Ga.) 799; 1 Hutchinson on Carriers, 3rd Ed., sec. 442.

Such stipulations, in brief, are upheld upon the theory that they are not opposed to public policy; that they are reasonable, and do not in any manner exempt the common carrier from negligence; but are conditions of recovery, and not exemptions from liability, which the carrier may lawfully include in its contract of shipment for the purpose of protecting it against fictitious and unfounded claims for damages.

The time fixed by the contracts within which an action should be brought appears to be reasonable, and as plaintiffs

did not give the notice required, or bring their action within the time limited, their right to maintain it is barred, unless, as claimed by their counsel, these provisions have been waived. In answer to this contention, it is only necessary to say that the waiver of a provision in a contract of carriage limiting the time within which suit must be brought, or requiring, as a condition precedent to the maintenance of an action, that written notice of a claim for damages must be given, as required by the contracts under consideration, when such limitations and conditions are pleaded as a defense, is a matter of confession and avoidance; and in order that a party may avail himself of such waiver the facts constituting it must be specially pleaded. —*Boone v. State Ins. Co.*, 37 Minn. 426; *Willits v. C. B. & K. C. Ry. Co.*, 80 Iowa 531; *Ehrlich v. Aetna Life Ins. Co.*, 103 Mo. 231; 18 Ency. Pl. & Pr. 717-718.

Plaintiffs have not complied with this rule by the averment of any facts excusing their failure to give the written notice required, or to bring their action within the period fixed by the contract of carriage either in their complaint or replication.

Several other questions have been argued by the respective counsel, which we do not deem it necessary to consider.

The judgment of the district court is reversed and the cause remanded for further proceedings in harmony with the views herein expressed. On proper application, either of the parties should be permitted to amend their pleadings as they may be advised.                   *Reversed and Remanded.*

Decision *en banc.*

Mr. JUSTICE MUSSER, Mr. JUSTICE WHITE and Mr. JUSTICE HILL dissent.

Mr. JUSTICE MUSSER, dissenting:

I dissent from the opinion of the court in this case. Aside from the question whether a railroad company can, in any manner, by private contract, restrict, limit, or forefend its liability for injuries occasioned by the direct violation of law, there exists the further question whether there was any contract as claimed by the company. The record discloses to me the following facts about this matter. Over the objections of the plaintiffs, that the same was immaterial and irrelevant, and that the execution thereof by plaintiffs had not been shown, the two alleged contracts, which I will call Contract No. 178 and Contract No. 179, were submitted to the court, and it is upon these contracts that the defense, and the judgment announced by the majority of this court are based. Contract No. 178, as set forth in the abstract, purports to be a contract made by W. O. Howe as shipper. It purports to be signed by the railroad company and by W. O. Howe. The so-called release is not signed at all. Contract No. 179 purports that the Wabash Cattle Company is the shipper and is signed "Wabash Cattle Co., Shipper, by W. O. Howe, Agent." The release is signed "A. L. Truax; W. H. Harper." There is absolutely no evidence in the abstract as to who W. O. Howe was, or that he ever signed either of the contracts in any capacity, or that he was there. His name is not mentioned. For aught that appears, the name of W. O. Howe, wherever it appears, in or on the contract, may have been written by the railroad agent. The only evidence concerning the signing of either of these contracts appearing in the abstract, was given by A. L. Truax, who accompanied the shipment, and is as follows:

"Before I left Holbrook, I remember signing papers supposed to be a contract; W. H. Harper did not come with me with these cattle; there was some one, but it was not W. H. Harper.

Q. Did you sign your name on the back of the contract? A. I don't remember where I signed it, but I signed my name where the agent told me to sign it.

The agent told me I had to sign the contract, that it was my pass over the road; I didn't read it; the agent didn't ask me to read it."

These contracts were set out, and their execution and the fact that the shipments were made under them were alleged in the answer. The replication denied the allegations of the answer. These contracts limited the common law liability of the carrier, and, if binding, in any event the burden of proving them rested upon the company.—*Coats v. C. R. I. & P. Ry. Co.*, 134 Ill. App. 217; *M. K. & T. Ry. Co. v. Carter*, 29 S. W. 565.

Free passage was granted by these contracts to the person or persons accompanying the shipment, and a contract was endorsed on the back relative to this transportation. There was also what was designated as "drover's return pass." The railroad agent represented that the one contract signed by Truax (Contract No. 179) was his pass over the road. He did not. represent that it was a long contract, limiting, in many particulars, the common law liability of the carrier. It was under the representations made by the agent, who stood in the place of the railroad company itself, that this. contract was at all signed by Truax. It is too plain to require the citation of authorities that a contract executed under such circumstances is not a contract, nor binding upon a shipper. The only place that Truax's name appears is on the release. Otherwise the contract appears to be executed by the Wabash Cattle Company, by W. O. Howe, agent, and Truax's name was obtained only by a misrepresentation of what the paper was. (See *So. Pacific Co. v. Anderson*, 63 S. W. 1023.)

Under these circumstances, the court below was correct in disregarding the alleged contracts entirely, and the judgment should be affirmed.

I am authorized to say that Mr. Justice Hill concurs with me.

Decided July 3, A. D. 1911. Rehearing denied December 9, A. D. 1912.